CARRIE FRISK, Appellee, v. CITY OF DES MOINES, Appellant.

**MUNICIPAL CORPORATIONS:** Streets—Driveway Depression in Sidewalk. Negligence may not be predicated on the act of a city in constructing and maintaining a 3-foot sidewalk with a 4-inch depression or cut at the outer edge thereof, in order to furnish a driveway approach to the adjacent lot.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MAY 15, 1923.

REHEARING DENIED OCTOBER 16, 1923.

ACTION to recover damages for personal injury caused by plaintiff's falling on an alleged defective sidewalk. Jury returned verdict in favor of plaintiff for $6,500. Facts appear in the opinion. Defendant appeals.—*Reversed.*

*William E. Miller, Henry H. Griffiths, Chauncey A. Weaver,* and *Russell Jordan,* for appellant.

*Fred J. Van Liew,* for appellee.

ARTHUR, J.—The sidewalk in question is on the east side of West Third Street, between Ascension Street and University Avenue, in the city of Des Moines. West Third Street extends north and south. It has never been paved. The walk in question is made of concrete, and was constructed in 1917 by the city. About a year before the walk was laid, a curbing six inches thick and seven inches deep was constructed along the east side of this street in said block. An opening was left in the curbing in front of the Brooks residence property, eight and one-half feet wide, for a driveway into said property. Request for the driveway was made by the owner of the property. By resolution, defendant city authorized the construction of what is designated in an ordinance as "Class B walk," on the east side of said West Third Street, where the accident occurred, which "Class B walk" calls for a walk of the width of four feet. The specifications called for a parking space of one foot between the curb and the west edge of the walk; that the surface of the walk, when finished, should have a fall from the lot line toward the curb of three-sixteenths inches to the foot; that the surface of the driveway, when completed, should be level with the adjoining walk; that, on either side of the walk across a private driveway, a lip should be constructed, rectangular in cross section, having a length equal to the width of the driveway, and thickness at the sidewalk of six inches, and base of eighteen inches. The walk was built along this block flush with the curbing, leaving no parking space between the walk and the curb. The

walk was laid four feet wide, except in front of the Brooks residence property. In front of this, property, the city's employees, the construction crew, when they came to lay the walk, found a coping or retaining wall, ten inches thick and twelve inches high. This coping or retaining wall extended its thickness of ten inches out beyond the lot line. The construction crew left the coping or retaining wall standing, and laid the sidewalk solid in the space between the coping and the curbing, making the sidewalk three feet and two inches wide, plus the width of the curbing, six inches, making the total width of the sidewalk and curbing three feet and eight inches. The walk was built of concrete, with a "float finish," which is a rough finish.

The testimony shows that from about the center of the walk across the driveway, as constructed, there is a decline toward the west edge of the walk of approximately three-eighths to one-half inch. Then out at the edge of the walk across the driveway there is a declivity, or "cut," as appellee in her testimony calls it,—that is, a drop of four and one-quarter inches in ten and three-quarters inches; and from the top of the curbing to

the bottom of the incline or level of the street, it is approximately six inches. At the time of the accident, the walk had remained and was in the same condition as originally constructed.

We insert photograph, which will aid in visualizing the situation at the point where the accident occurred.

One of the employees of the city who was in charge of the building of the walk in question testified that, in constructing a walk where a retaining wall was met, extending out over the lot line, and there was not sufficient room to build the walk in width according to the specifications, they did not disturb the coping or retaining wall, and built the walk the width afforded by the space left.

I.    Appellee testified that, on the 1st day of October, 1919, she was over to see Mrs. Anna Tramberg, who lives on the west side of West Third Street, a little south of the scene of the accident; that she and Mrs. Tramberg left Mrs. Tramberg's home between 6 and 7 o'clock in the evening and went east across the street to the sidewalk on the east side of the street, and then went north on the sidewalk 40 or 50 feet to the place of the accident, the driveway; that she had never been over that sidewalk before. She testified:

"As I went north, I fell on this walk,—the place that is cut out of the sidewalk. I noticed the wall on the sidewalk, and I stepped away. My foot struck the incline, and I fell. I struck on my right side. I tried to catch me with my hand, and fell backwards. Mrs. Tramberg reached the apron or cut in the sidewalk first; she had crossed the cut before I fell. I stepped in the cut with my right foot, and fell."

Mrs. Anna Tramberg testified that she crossed the driveway ahead of Mrs. Frisk, and stood on the curbing on the north side; that Mrs. Frisk fell with her head to the east, with "her feet sidewise, and she fell on the hip, and that hand up against the retaining wall;" and that her feet were out toward the street.

II.    The petition charged negligence against the defendant city:

(1)    In constructing and maintaining the sidewalk, at the

point where the accident occurred, in a dangerous and unworkmanlike manner.

(2)   In constructing and permitting to exist a smooth incline in the traveled portion of said sidewalk.

(3)   In permitting the coping to permanently obstruct said sidewalk, necessitating that pedestrians walk to the west edge of said walk, compelling them to step upon said dangerous incline.

(4)   In failing to construct and maintain said walk in a level condition for the full width of four feet.

(5)   In failing to construct said walk as provided by ordinance and specifications.

At the close of all the testimony, defendant moved that a verdict be directed in its favor, on grounds as follows:

That the testimony failed to establish any defect in the sidewalk in question, within the legal meaning of that term; that the testimony failed to establish any legal liability on the part of the defendant city for injury sustained by plaintiff; that the testimony failed to establish any negligence on the part of the defendant; that the plaintiff failed to prove any negligence on the part of the defendant as a proximate cause of the injury.

Some fifteen errors are assigned which are relied upon for reversal, claiming error in permitting the introduction in evidence of the resolution of the city council ordering the construction of the sidewalk in controversy, and the plans and specifications for the construction of said walk; error in overruling an offer of testimony by defendant to show completion of the walk, the payment to the contractor for his work, and the complete ratification of all acts and proceedings in connection therewith by the defendant city; error in refusing to allow defendant's witness Anderson to testify concerning the custom of constructing driveways; errors in giving a number of instructions; and error by the court in overruling defendant's motion for a directed verdict.

III.   We will consider the assignment based on overruling defendant's motion for a directed verdict. As we view it, the vital question and the decisive question in the case is whether or not there was a defect existing as the sidewalk was constructed and existed at the place where the accident occurred.

That is, may it be said to be negligence to construct and maintain a walk as this walk was constructed and maintained at the point of the accident?

There is no dispute in the testimony as to the actual condition of the walk, and that the walk at the time of the accident was in the same condition as when originally constructed. Plaintiff predicates liability of the city on the construction and maintenance of the walk in the condition in which it was, as an actionable danger.

The testimony is not clear as to the exact spot appellee's feet were on when she fell. Appellee says:

"As I went north, I fell on this walk,—the place that is cut out of the sidewalk. I noticed the wall on the sidewalk, and I stepped away. My foot struck the incline, and I fell. I struck on my right side. I stepped in the cut with my right foot, and fell."

Nowhere in their argument do counsel for appellee indicate at what particular point in the driveway appellee lost her footing. Counsel say in argument:

"In the case at bar, the walk, including the abrupt incline, was not to exceed 38 inches and that from the level of the walk to the bottom of the incline there was a drop of 6 inches."

Appellee says she turned out to the west, when she came up to the retaining wall, and then she says: "I stepped in the cut with my right foot, and fell." We take it from the statement of appellee and the argument of her counsel that, in walking north, she came up to the retaining wall, and from that point walked to the extreme west edge of the walk, and there stepped into the cut or lip of the driveway. If appellee passed over from the coping or retaining wall to the cut or lip,—that is, the abrupt decline of about 6 inches to the street level,—she left at her right 38 inches of sidewalk between her and the retaining wall. Certainly it cannot be said that making the cut or lip at the west edge of the walk as it was made, 38 inches from the east edge, constituted actionable negligence on the part of defendant. The testimony shows that there is a decline in the walk over the driveway from about the middle of the walk to the west edge of the walk of approximately three-eighths to one-half inch. A slight dip in a walk to the outer edge is probably for

the purpose of permitting water to run off more readily. We think it must be said that the dip in this walk was negligible. There is suggestion in the testimony that it was slightly down grade in going north on the sidewalk, but the testimony does not disclose the grade.

Counsel for appellee lay much stress on the city's being negligent in not laying the walk strictly in accordance with the specifications. We do not deem that important or in any degree controlling. A walk might be constructed in strict accordance with resolution, plan, and specification, and be of such defective construction as to constitute actionable negligence. The real question is whether the walk, as it actually was constructed and existed at the time of the accident, was of such negligent construction and maintenance as to render the city liable therefor. This walk over the driveway was 38 inches wide, from the retaining wall out to the abrupt decline to the street. This gave ample room for pedestrians to walk on.

Not as controlling, but as illuminating, and as supporting our holding in this case, we call attention to *Johnson v. City of Ames,* 181 Iowa 65. In the *Johnson* case are cited a number of cases bearing on the question involved in the instant case. Also, see *Hollan v. City of Milwaukee,* 174 Wis. 392 (182 N. W. 978) ; *Hirst v. City of Missouri Valley,* 193 Iowa 1225.

We are constrained to hold that, as a matter of law, the construction and maintenance of the walk in question did not constitute actionable negligence on the part of the city.

Holding as we do, we will not discuss other assignments of error. The trial court erred in refusing to direct verdict in favor of the defendant. The judgment of the trial court is— *Reversed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.