Tony A. HENDERSON, Department of Health and Social Services and Department of Veteran Affairs, Plaintiffs-Appellants,

v.

MILWAUKEE COUNTY, Defendant-Respondent.†

Court of Appeals

*No. 95–2294–FT. Submitted on briefs November 21, 1995.—Decided December 19, 1995.*

(Also reported in 543 N.W.2d 544.)

†Petition to review denied.

747

For the plaintiffs-appellants the cause was submitted on the briefs of *Hausmann-McNally, S.C.*, with *Nancy E. LeMarbre*, and *Timothy J. Cesar*, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Office of Corporation Counsel*, with *Louis Edward Elder*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Tony A. Henderson appeals from the trial court final order granting summary judgment to Milwaukee County and dismissing his complaint. Henderson argues that the trial court erred in concluding that § 81.15, STATS., immunized Milwaukee County from liability for injuries allegedly suffered as a result of a fall on a stairway connecting sidewalks located on the grounds of the Milwaukee County House of Correction. Henderson is correct. Because § 81.15 does not apply to stairway and because material factual issues remain for trial, we reverse.

Henderson brought an action alleging that on the afternoon of February 16, 1993, while he was an inmate at the Milwaukee County House of Correction, he broke his ankle when he "slipped and fell on an accumulation of ice on the concrete steps which are located between the H Dorm and the Recreation Center" on the House of Correction grounds. He presented claims under theories of both common law negligence and the safe-place statute, § 101.11(1), STATS.

According to the summary judgment submissions, as Henderson and other inmates were walking from a dormitory to the recreation center, Henderson slipped while he was going down a flight of eight concrete steps connecting two sidewalks. He attempted to regain his balance, slipped again and broke his ankle. Henderson alleged that drainage problems had caused the accumulation of ice and that there were no handrails on the stairway.

Granting Milwaukee County's motion for summary judgment, the trial court concluded that the County was immunized from liability under § 81.15,

STATS., which provides, "No action may be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless the accumulation existed for three weeks." The parties acknowledge that case law has extended the meaning of "highways" in § 81.15, to include sidewalks. *See Damaschke v. City of Racine*, 150 Wis. 2d 279, 283, 441 N.W.2d 332, 334 (Ct. App. 1989). The question remains, however, whether the statute also includes stairways connecting sidewalks. The trial court concluded that "there is no question that a sidewalk was involved here, no question that the steps were a part of that sidewalk."

"In reviewing a grant of summary judgment, this court applies the same standards as the trial court. A motion for summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Thompson v. Threshermen's Mut. Ins. Co.*, 172 Wis. 2d 275, 280, 493 N.W.2d 734, 736 (Ct. App. 1992). "[S]ummary judgment is not appropriate," however, "if there is a material issue of fact or if different inferences may be drawn from the facts." *Kohl v. F.J.A. Christiansen Roofing Co.*, 95 Wis. 2d 27, 32, 289 N.W.2d 329, 332 (Ct. App. 1980). Whether the County is entitled to immunity pursuant to § 81.15, STATS., under the summary judgment submissions in this case presents a question of law subject to our *de novo* review. *See Damaschke*, 150 Wis. 2d at 283, 441 N.W.2d at 334.

The express language of § 81.15, STATS., immunizes the County from liability that otherwise might result from the accumulation of ice on "bridges" or "highways" and, as we have noted, case law has allowed "highways" to encompass sidewalks. None of

the cases, however, considered whether "highways" could also include stairways connecting sidewalks.[1] Henderson argues that common sense dictates a distinction between sidewalks and stairways. He invokes WIS. ADM. CODE § ILHR 51.161,[2] establishing safety standards for stairways that are connected to buildings. Referring to these standards, Henderson contends that "[t]he dissimilarity between sidewalks and stairways is evidenced by the creation of administrative standards such as those promulgated by the Department of Industry, Labor and Human Relations . . . which regulate the necessity for handrails on stairs over three risers high."

▮

Without reaching any conclusion regarding whether the specific safety standards for stairways that are "an integral part" of a building should apply to

---

[1] *Damaschke v. City of Racine*, 150 Wis. 2d 279, 441 N.W.2d 332 (Ct. App. 1989), dealt with a slip and fall on a driveway apron. *Webster v. Klug & Smith*, 81 Wis. 2d 334, 260 N.W.2d 686 (1978), dealt with a slip and fall on a temporary sidewalk in a construction area adjacent to a building. *Smith v. City of Jefferson*, 8 Wis. 2d 378, 99 N.W.2d 119 (1959), involved injuries suffered by a child who was burned when her dress was ignited by kerosene flarepots being used to mark a sidewalk defect. *Trobaugh v. City of Milwaukee*, 265 Wis. 475, 61 N.W.2d 866 (1953), involved a slip and fall on a city sidewalk.

[2] WIS. ADM. CODE § ILHR 51.161 provides:

**Handrails.** (1) WHERE REQUIRED. Handrails shall be provided in all of the following conditions unless otherwise specified in the occupancy chapters of this code.

. . . .

(e) On both sides of exterior stairways with more than 3 risers and on both sides of exterior ramps overcoming a change of elevation of more than 24 inches, either of which are an integral part of the building.

stairways connecting sidewalks, we do agree that common sense dictates a distinction between sidewalks and stairways.[3] The distinction is obvious to any person who has ever stumbled, slipped or tripped going up or down a stairway. Case law has not extended § 81.15, STATS., to stairways, and Milwaukee County has offered no authority to suggest why we should do so. A rose is a rose, but an eight-step stairway is not a sidewalk.

The County also argues that the safe-place statute is inapplicable to the House of Correction because a correctional facility is not a place of employment "in the traditional sense," and because it is not open to the public.[4] The County is wrong. Section 101.11(1) STATS., provides:

---

[3] Henderson acknowledges that the stairway involved in this case was not "an integral part of [a] building" and, therefore, this regulation does not specifically apply. By the same token, our decision should not be interpreted as one imposing this regulatory requirement beyond its specified parameters. We do agree, however, that this regulation is instructive in supporting Henderson's argument.

[4] We note, however, that the County's answer to Henderson's original complaint admitted that the County "was an employer and owner of a public building as defined by Chapter 101 of the Wisconsin Statutes, and as such, it was the duty [of the County] to keep the place of employment and public building where Plaintiff fell safe for inmates, guests and/or frequenters . . . and to use such methods and procedures to render such place of employment safe, and to do everything reasonably necessary to protect the health, safety, and welfare of inmates, guests and/or frequenters of such place of employment and public building pursuant to the provisions of Chapter 101 of the Wisconsin Statutes." Henderson subsequently filed an amended complaint, simply adding the Department of Veteran Affairs as a subrogated party. The appellate record,

Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

In *Lealiou v. Quatsoe*, 15 Wis. 2d 128, 131-132, 112 N.W.2d 193, 195 (1961), the supreme court commented:

In construing the safe-place statute, at least two fundamental different approaches have been taken. The owner's duty to maintain the building safe has been said not to exist because either the building, as a whole or that part of the building where the accident happened, was not a public building or maintained as a public building. . . . An example of this approach is *Flynn v. Chippewa County* (1944), 244 Wis. 455, 12 N.W.2d 683. . . . In that case, recovery was denied a prisoner in a jail who was injured when he fell down a stairway in that part of the jail which was not open to the public or maintained for general use by the prisoners. The court said the jail was not a public building. This language is misleading. The court assumed the duty of the owner to repair or maintain was coextensive

---

however, does not reflect that the County ever filed an amended answer.

> with the physical limits of a public building. Because this result was not intended by the legislature, the court confined the term "public building" to only those parts of the jail which were maintained for use by the public. This method of reasoning localizes the owner's duty to repair in terms of a definition of a public building applied only to part of a structure and, consequently, requires that part of the building to be either used by the public. . . . This reasoning entirely overlooks the owner's duty to construct the entire building free from structural defects as render the building unsafe.

Although somewhat elliptical, the supreme court's comments support Henderson's contention that the safe-place statute applies to a stairway on the grounds of the House of Correction. The County has offered no authority to suggest why the House of Correction would be excluded from the reach of the safe-place statute, and we can discern no legal or logical basis for doing so.

Under the safe-place statute, "whether the place is reasonably safe is dependent upon the facts and circumstances of the particular case." *McGuire v. Stein's Gift & Garden Ctr.*, 178 Wis. 2d 379, 398, 504 N.W.2d 385, 393 (Ct. App. 1993). This presents a question of fact for the jury in all but the exceptional case. *Id.* Henderson contends that under the circumstances in this case factual issues remain regarding whether the County acted negligently in not maintaining proper drainage to keep the stairway clear of ice, and in not placing hand rails on this eight-step stairway. Thus, whether the County failed to provide a safe stairway at the House of Correction, and whether any such failure caused injury to Henderson will depend on the facts

and circumstances developed at trial. Clearly, material factual issues remain.[5]

*By the Court.*—Order reversed.

[5] The parties also argue over whether the accumulation of ice in this case was "natural" or "artificial" under the case law interpreting § 81.15, STATS. However, because we have concluded that § 81.15 is inapplicable to a stairway, we need not address this issue.