Judith GULBRANDSEN and Peter Gulbrandsen,
Plaintiffs-Appellants,

AETNA LIFE INSURANCE COMPANY, d/b/a Aetna U.S.
Healthcare, Subrogated-Plaintiff-Appellant,

v.

H & D, INC., d/b/a Sunset Family Restaurant and
Society Insurance, A Mutual Company,
Defendants-Respondents,

OLYMPIA-WAUKESHA LLC, a/k/a Olympia III LLC
and ABC Insurance Company, Defendants.

Court of Appeals

*No. 2008AP2990. Submitted on briefs June 25, 2009.
—Decided August 26, 2009.*

2009 WI App 138

(Also reported in 773 N.W.2d 506.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jean J. Brown* of *Jastroch & LaBarge, S.C.*, Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michelle D. Johnson* of *Simpson & Deardorff, S.C.*, Milwaukee.

Before Neubauer, P.J., Anderson and Snyder, JJ.

¶ 1. NEUBAUER, P.J. Judith Gulbrandsen and Peter Gulbrandsen, along with their insurer, Aetna Life Insurance Company, appeal from a summary judgment in favor of Sunset Family Restaurant and Society Insurance. The Gulbrandsens brought this action against Sunset alleging common law negligence and violation of the Wisconsin safe place statute, WIS. STAT. ch. 101 (2007–08),[1] after Judith was allegedly injured during a fall caused by a sidewalk crack outside the restaurant. The trial court granted summary judgment in favor of Sunset based on its determination that the sidewalk crack caused a "minimal difference" in elevation and the restaurant did not have actual or constructive notice of an unsafe condition. The Gulbrandsens appeal.

## BACKGROUND

¶ 2. The Gulbrandsens' complaint alleged that on November 22, 2005, Judith was walking from the back parking area of the restaurant toward the entrance when she "tripped and fell over a cracked and uneven portion of the sidewalk on the property." The Gulbrandsens further alleged that the defendants "were negligent in failing to properly and timely inspect, repair, maintain and warn against the trip hazard existing on the sidewalk on its property" and, as a result, Judith suffered injuries and both Judith and Peter incurred damages as a result. The Gulbrandsens' complaint alleged both common law negligence and a violation of Wisconsin's safe place statute. The Gulbrandsens later

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

413

amended their complaint to name the property owner/landlord as an additional party defendant.[2]

¶ 3. Sunset's answers and affirmative defenses denied the allegations and requested dismissal of the Gulbrandsens' complaint. Sunset later moved for summary judgment and argued that (1) it did not have actual or constructive notice of the crack in the sidewalk and (2) even if it did have notice, Wisconsin law prohibits holding a party liable for a crack that creates less than a one inch change in elevation. The owner of Sunset, Dimitrios Katravas, stated in an affidavit that the crack in the sidewalk in front of the restaurant on November 5, 2005, created a change in elevation of approximately one-half to five-eighths inch.

¶ 4. Following a motion hearing, the trial court granted Sunset's motion for summary judgment as to both the negligence claim and safe place statute claim based on its determination that, as a matter of law, the owners of Sunset had not received either actual or constructive notice of any unsafe condition or improper repair or maintenance of the sidewalk. The Gulbrandsens appeal.

## DISCUSSION

¶ 5. We review summary judgment de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We first determine whether the complaint states a claim. *Id.* If the complaint states a claim, we then determine whether there are any mate-

---

[2] However, under the terms of its lease, Sunset assumed responsibility for repairing and maintaining the building and parking lot area.

rial facts in dispute and whether the moving party is entitled to judgment as a matter of law. *Id.*; *see also* WIS. STAT. § 802.08(2). In doing so, we view all summary judgment material in the light most favorable to the party opposing the motion, *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980), and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the moving party, *Heck & Paetow Claim Serv., Inc. v. Heck*, 93 Wis. 2d 349, 356, 286 N.W.2d 831 (1980).

¶ 6.    The Gulbrandsens' claims were based upon both the safe place statute and common law negligence. The duties of an owner of a public building to a "frequenter" are those prescribed by the safe place statute, WIS. STAT. § 101.11, and the principles of common law negligence. *Monsivais v. Winzenried*, 179 Wis. 2d 758, 764, 508 N.W.2d 620 (Ct. App. 1993). The safe place statute requires every owner of a public building to construct, repair or maintain that building so as to render it safe. Sec. 101.11(1). This duty has a higher standard of care than that imposed by common law negligence and addresses unsafe conditions, not negligent acts. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 9, 274 Wis. 2d 162, 682 N.W.2d 857.

*Safe Place Claim*

¶ 7.    To succeed on a claim under the safe place statute, the Gulbrandsens bear the burden of showing that (1) there was an unsafe condition associated with the structure, (2) the unsafe condition caused Judith's injury, and (3) Sunset had either actual or constructive

415

notice of the unsafe condition before Judith's injury. *See Hofflander v. St. Catherine's Hosp., Inc.*, 2003 WI 77, ¶ 89, 262 Wis. 2d 539, 664 N.W.2d 545. All three elements must be proven to obtain recovery under the statute. *Id.*

¶ 8. At the outset, the Gulbrandsens challenge the trial court's determination that, as a matter of law, the cracked and heaved-up area of the sidewalk was too minimal to create an unsafe condition or to place the owner on notice of a trip hazard. Under the safe place statute, the inquiry as to whether the place is reasonably safe is dependent upon the facts and circumstances of the particular case and is "a question of fact for the jury in all but the exceptional case." *See Henderson v. Milwaukee County*, 198 Wis. 2d 747, 754, 543 N.W.2d 544 (Ct. App. 1995) (citing *McGuire v. Stein's Gift & Garden Ctr., Inc.*, 178 Wis. 2d 379, 398, 504 N.W.2d 385 (Ct. App. 1993)). Here, neither the existence of the crack nor its height was disputed by the parties at the trial court level. Instead, Sunset argued, as it does on appeal, that Wisconsin case law establishes that a one-half to five-eighths inch change in elevation in the sidewalk is not an unsafe condition.

¶ 9. In support of its argument, Sunset cited to the supreme court's decision in *McChain v. City of Fond du Lac*, 7 Wis. 2d 286, 292, 96 N.W.2d 607 (1959), for the proposition that "slight depressions or obstructions in a sidewalk do not prevent such a sidewalk from being considered reasonably safe as a matter of law." In considering what amounts to insufficiency or want of repair for purposes of a municipality's liability under then Wis. Stat. § 81.15 (1953), the court took into account numerous prior cases and the mathematical deviations considered to be reasonably safe as a matter of law. *McChain*, 7 Wis. 2d at 292–93 (citing *e.g.*,

*McCormick v. City of Racine*, 227 Wis. 33, 277 N.W. 646 (1938), in which a two and three-eighths inch difference in elevation between blocks of sidewalk did not give rise to liability, and *Padden v. City of Milwaukee*, 173 Wis. 284, 181 N.W. 209 (1921), in which a one and five-eighths inch pipe projection above and in surface of sidewalk did not give rise to liability). However, Wisconsin courts have since moved away from a mathematical deviation rule, even in considering municipal liability.

¶ 10.  In *Westler v. City of Milwaukee*, 34 Wis. 2d 272, 276, 149 N.W.2d 624 (1967), the supreme court observed that it did not think "prior cases like *McCormick* and those reviewed extensively in [*McChain*], which held certain conditions did not constitute defects, are necessarily controlling on the question of whether a condition of a sidewalk is reasonably safe for public travelers to use in the exercise of ordinary care." The court observed that "[t]he ultimate question is not what is a defect, or how many inches high was the obstruction or deep the depression, but solely whether under all circumstances affecting the sidewalk it was in a reasonably safe condition for public travel by persons exercising ordinary care for their own safety."[3] *Westler*, 34 Wis. 2d at 276. The court thus declined "to keep a mathematical deviation rule as a standard of a safe sidewalk" and concluded that *McCormick* does "not control the question of the unsafeness of a sidewalk." *Westler*, 34 Wis. 2d at 276–77. Therefore, we agree with the Gulbrandsens that the trial court erred insofar as it

---

[3] Sunset contends that summary judgment is appropriate because "[n]o evidence has been presented to show the one-half to five-eighths of an inch height difference was unreasonable or unsafe." However, the determination as to reasonableness and safety is precisely what the Gulbrandsens are requesting that a jury resolve.

applied a height requirement to the sidewalk crack. Rather, the inquiry on summary judgment is whether the Gulbrandsens' submissions were sufficient to create a genuine issue of material fact as to the existence of an unsafe condition. We conclude that they were.

¶ 11. As to the safe place claim, the Gulbrandsens' complaint alleges that Sunset "had actual or constructive knowledge of the trip hazard posed by the cracked and uneven nature of the sidewalk condition, and failed to keep and maintain the premises in as safe a condition as the nature of the place would reasonably permit." In opposition to summary judgment, the Gulbrandsens submitted Judith's deposition testimony that the sidewalk outside of Sunset was "uneven." Judith testified: "[M]y toe of my shoe caught on the edge of the cement that was raised up or that was higher than the other part of it, and I fell down because of that. I lost my balance and fell down." Judith testified that after her fall she went into the restaurant and told the person behind the register that she had fallen "on a part of the sidewalk that was not level with the other one." She brought the Sunset employee outside in order to show her "where the difference was."

¶ 12. The Gulbrandsens additionally submitted photos of the sidewalk crack taken two days after the incident. The photos depict a crack in a sidewalk adjacent to a parking area. While the height of the crack is not discernable from the photo, the crack is visible. Finally, the Gulbrandsens submitted an affidavit from a Sunset customer, David Josing. Josing averred that he had been frequenting the restaurant for "about a year and a half" at the time of Judith's fall and that he had walked on the sidewalk in question every time he went to the restaurant. He stated that he had first observed the "cracked and heaved up" area of the sidewalk about

two months before Judith's fall and that the photographs submitted by Judith "fairly and accurately show the cracked and heaved up area of the sidewalk that [he] personally saw." He stated that "[n]o one ever asked me if I had seen the bad condition of the sidewalk myself before the day that [Judith] was hurt."[4]

¶ 13.   We conclude that the Gulbrandsens' submissions in opposition to summary judgment were sufficient to create a material issue of fact as to whether the condition of the sidewalk was unsafe. We therefore turn to whether the Gulbrandsens raised a material issue of fact as to actual or constructive notice.

██ ██

¶ 14.   In order for an owner to be subject to the standard of care established by Wis. Stat. § 101.11(1) for any unsafe condition of the premises, the owner must have notice that an unsafe condition exists. *Megal*, 274 Wis. 2d 162, ¶ 11. The general rule when applying the safe place statute is that an owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed long enough for a reasonably vigilant owner to discover and repair it. *Id.*, ¶ 12. "Whether an employer had notice depends upon the surrounding facts and circumstances and is generally a jury question." *Gerdmann v. United States Fire Ins. Co.*, 119 Wis. 2d 367, 371, 350 N.W.2d 730 (Ct. App. 1984); *see also, Megal*, 274 Wis. 2d 162,

---

[4] The trial court found Josing's affidavit to be lacking, stating, "Mr. Josing said a crack existed. That's it." However, when viewing Josing's affidavit in the light most favorable to the Gulbrandsens, it, along with the other facts, creates a genuine issue of material fact as to the condition of the sidewalk ("cracked and heaved up" and in "bad condition") and the length of time it had been there (at least "two months before" Judith's fall).

¶ 20 n.2. The Gulbrandsens challenge the trial court's determination on summary judgment that they failed to submit evidence of constructive notice.

¶ 15. With respect to notice, the photos submitted by the Gulbrandsens were intended to demonstrate that the crack had existed for quite some time. Based on our review, we agree that the photo supports such an inference. In the photos, the crack is filled with dirt and debris and has worn edges. While the owner denied knowing that the crack existed prior to Judith's fall, the photo reflects that it is readily visible and runs the entire length of the sidewalk. Further, Josing's affidavit states: "I first noticed the cracked and heaved up area on the sidewalk myself about two months before the day that [Judith] came in and said she fell on it." While he did not know how long it had been there prior to his noticing it or what Sunset's inspection policy was, he stated: "Over the years I have observed one of the owners plowing the parking lot in the winter months and I have seen a bus boy doing some winter maintenance on the sidewalk . . . . I have observed that the lot, sidewalk and entry area is generally kept free from trash . . . ." Finally, Judith's deposition testimony indicated that the sidewalk, which runs along the side of the restaurant, would be used by anyone accessing the door of the restaurant from the back parking lot.

¶ 16. We conclude that the Gulbrandsens' submissions create a genuine issue of material fact as to whether a reasonably vigilant owner would have discovered the sidewalk crack and repaired it. Based on the evidence submitted, both as to unsafe condition and constructive notice, we conclude that the trial court erred in granting summary judgment as to the Gulbrandsens' safe place claim.

*Common Law Negligence Claim*

■

¶ 17.   The Gulbrandsens also challenge the trial court's grant of summary judgment as to their common law negligence claim. Under principles of common law negligence, every person owes a duty of care to the world at large to protect others from foreseeable harm. *Jankee v. Clark County*, 2000 WI 64, ¶ 53, 235 Wis. 2d 700, 612 N.W.2d 297. Put another way, every person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care. *Gritzner v. Michael R.*, 2000 WI 68, ¶¶ 20, 22, 235 Wis. 2d 781, 611 N.W.2d 906. In Wisconsin, a duty to use ordinary care is established whenever it is foreseeable to the defendant that his or her act or failure to act might cause harm to some other person. *Id.*, ¶ 20. Under the general framework governing the duty of care, a "person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Id.*, ¶ 22 (quoting WIS JI—CIVIL 1005).

¶ 18.   Our supreme court has observed:

> As a general rule . . . the existence of negligence is a question of fact which is to be decided by the jury. To hold that a person is not negligent as a matter of law, the court must be able to say that no properly instructed, reasonable jury could find, based upon the facts presented, that the defendants failed to exercise ordinary care. This court has stated that summary judgment does not lend itself well to negligence questions and should be granted in actions based on negligence only in rare cases.

*Ceplina v. South Milwaukee Sch. Bd.*, 73 Wis. 2d 338, 342–43, 243 N.W.2d 183 (1976) (footnotes omitted).[5] Moreover, "[w]e have often stated summary judgment is a drastic remedy and should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear. Summary judgment is not to be a trial on affidavits and depositions." *Lecus v. American Mut. Ins. Co.*, 81 Wis. 2d 183, 189, 260 N.W.2d 241 (1977).

¶ 19. Here, the Gulbrandsens alleged that Sunset was "negligent in failing to properly and timely inspect, repair, maintain and warn against the trip hazard existing on the sidewalk on its property." In opposing summary judgment, the Gulbrandsens submitted photos, affidavits and deposition testimony which, viewed in the light most favorable to the Gulbrandsens, create a genuine issue of material fact as to negligence. As such, Sunset is not entitled to summary judgment as a matter of law. *See also* WIS. STAT. § 802.08(2).

## CONCLUSION

¶ 20. We conclude that the trial court erred in its determination that the Gulbrandsens failed to raise a genuine issue of material fact as to either an unsafe condition or constructive notice, and that Sunset was

---

[5] This court more recently reiterated this observation, stating:

> Whether a person exercised ordinary care usually is not determinable by summary judgment. The concept of negligence is peculiarly elusive, and requires the trier of fact to pass upon the reasonableness of the conduct in light of all the circumstances, even where historical facts are concededly undisputed. Negligence is ordinarily not a decision for the court.

*Bain v. Tielens Const., Inc.*, 2006 WI App 127, ¶ 6, 294 Wis. 2d 318, 718 N.W.2d 240 (citations omitted).

entitled to judgment as a matter of law. We further conclude that the trial court erred in granting summary judgment to Sunset on the issue of negligence. We therefore reverse the judgment and remand for further proceedings on the Gulbrandsens' claim.

*By the Court.*—Judgment reversed and cause remanded with directions.