# COURT OF APPEALS
## DECISION
## DATED AND FILED

## September 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1145**

Cir. Ct. No. **2018CV909**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

VILLAGE OF CHENEQUA,

   PLAINTIFF-RESPONDENT,

 V.

JILL DAHLQUIST,

   DEFENDANT-APPELLANT.

         APPEAL from an order of the circuit court for Waukesha County: LAURA F. LAU, Judge. *Affirmed*.

         ¶1     NEUBAUER, C.J.[1] Jill Dahlquist appeals from an order determining that she violated a Village of Chenequa no parking ordinance.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Dahlquist primarily argues that the ordinance conflicts with state law and is therefore invalid and unenforceable. Because Dahlquist fails to show how the presumptively valid ordinance violates state law, we affirm.

## BACKGROUND

*The Parking Citation*

¶2 In July 2017, Dahlquist drove into the Village on Highway 83, which displays signs stating:

VILLAGE OF CHENEQUA

NO PARKING

ON ANY STREET

EXCEPT AS AUTHORIZED BY

VILLAGE ORDINANCE 7.01(4)

Looking for a place to park to go fishing at Beaver Lake, Dahlquist turned off of Highway 83 and onto Thompson Lane.[2] She saw no "no parking" signs.

¶3 While Dahlquist fished, Village Police Officer Richard Johns placed a citation on her car for violating CHENEQUA, WIS., CODE ch. 7.01(4)(a), which generally prohibits parking on all Village highways and streets. Although based on the ordinance violation, the citation also referred to WIS. STAT. § 346.55(4), which generally authorizes private property owners to restrict or allow parking on their property, provided the owner has posted a sign indicating what is or is not allowed.

---

[2] Both parties agree that the material facts are largely undisputed.

*The Municipal and Circuit Court Trials*

¶4      Dahlquist pled not guilty, going to trial in April 2018 at the Lake County Municipal Court.[3]  Rejecting Dahlquist's assertions that the Village failed to warn that Thompson Lane was a no parking roadway and that the ordinance in any event violated state law, the municipal court found her guilty.  Dahlquist appealed to the circuit court without a jury.  *See* WIS. STAT. § 800.14(4).

¶5      At trial, Johns testified that the car caught his attention because, in his eleven-year police career, he had "never [seen] a vehicle parked along Thompson Lane," and "it is very much out of the norm."  He said Highway 83 displays numerous "no parking" signs—which is the highway that crosses Thompson Lane—and that other entrances into the Village also post such signs at the limits.  Johns stated that, based on his training, he could issue a citation for parking on a private road (in addition to parking on a public street or highway under the ordinance).[4]

¶6      Also testifying was Robert Douglas, who served as both the Village's chief of police and administrator.  He has been employed by the Village for twenty-nine years.  He is familiar with the ordinances and their adoption, generally including CHENEQUA, WIS., CODE ch. 7.01(4)(a).  He testified that all roadways entering the Village had a posted sign notifying passersby of the no

---

[3] Presiding was the Honorable Timothy T. Kay, Municipal Court Judge.

[4] Before trial, Dahlquist moved for summary judgment.  She essentially argued that the ordinance was unauthorized and inconsistent with state law and was therefore unenforceable. Although the circuit court believed that the primary issues were legal in nature, it also noted that there may be some issues of material fact, such as whether Thompson Lane was public or private, and therefore denied the motion.

parking rule. Although he did not remember when this ordinance was first discussed, his recollection is that it has not changed since 1990, and he had no reason to believe it was improperly adopted. He is not aware of any Village meeting minutes or other records addressing the adoption of the ordinance.

¶7    Dahlquist admitted that she came into the Village via Highway 83, which has a posted sign. She also testified that she undertook research to determine whether Thompson Lane was public or private, but Dahlquist ultimately stated she did not believe it mattered, because the language of the ordinance violated state law regardless of the land ownership.[5]

¶8    After trial, the circuit court allowed briefing. Dahlquist argued the ordinance was unauthorized by and noncompliant with state law, was not shown to be properly adopted, and failed to provide constitutional due process. In a one-page decision and order, the court concluded the ordinance was not unconstitutional, and it found Dahlquist guilty of violating CHENEQUA, WIS., CODE ch. 7.01(4)(a). Dahlquist appeals.

---

[5] Dahlquist now states that the public/private issue is "irrelevant."

4

## DISCUSSION

*Standard of Review*

¶9     The primary issue is whether the ordinance violated state law. Whether a municipal ordinance is authorized by or conflicts with state law involves statutory and ordinance interpretation, presenting an issue of law which we review de novo. *See County of Milwaukee v. Williams*, 2007 WI 69, ¶17, 301 Wis. 2d 134, 732 N.W.2d 770 (whether the statute conflicts with the county ordinance, rendering it invalid and unenforceable, involves an interpretation of both legislative acts, an issue of law which we review independently); *Anchor Sav. & Loan Ass'n v. Equal Opportunities Comm'n*, 120 Wis. 2d 391, 395-96, 355 N.W.2d 234 (1984); *United States Oil, Inc. v. City of Fond Du Lac*, 199 Wis. 2d 333, 338, 544 N.W.2d 589 (Ct. App. 1996) (whether state law preempted the City's tobacco ordinance required interpretation of the state and local legislation, making it a question of law).

¶10    We afford an ordinance every presumption in favor of its validity, and the burden is on the challenger to rebut the presumption. *See Town of Clearfield v. Cushman*, 150 Wis. 2d 10, 20, 440 N.W.2d 777 (1989);[6] *City of Milwaukee v. Hoffmann*, 29 Wis. 2d 193, 197, 138 N.W.2d 223 (1965) (involving city ordinance restricting nighttime parking).

---

[6] "An ordinance is presumed to be valid and the burden of proving it invalid is on one who asserts its invalidity…. One asserting must prove a particular application of an ordinance, or at least relate his or her argument to the ordinance at hand." 6 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 22:27 (3d ed.) (footnotes omitted).

*VILLAGE OF CHENEQUA CODE 7.01(4) Does Not Violate State Law*

¶11    Dahlquist argues the ordinance's regulation—essentially barring all highway and street parking—exceeds the enabling authority granted by the legislature, making the ordinance invalid and unenforceable.    We reject Dahlquist's arguments which fail to consider the express authority granting the Village authority to enact the ordinance.

¶12    We begin with the ordinance:

> (4)  PARKING.
>
>   (a) GENERAL LIMITATION.  Except as permitted by [WIS. STAT. § 346.50], by this code, or by any posted signs, it shall be unlawful to park or leave standing any truck, automobile, motorcycle, wagon or other vehicle on any street, highway or public parking lot in the Village of Chenequa.  This section is adopted pursuant to [WIS. STAT. § 349.13] and is expressly in lieu of [WIS. STAT. §§ 346.51 through 346.56] inclusive.

CHENEQUA, WIS., CODE ch. 7.01(4)(a).[7]  The ordinance's pertinent parts are that (1) parking is illegal on any street or highway and (2) the ordinance was adopted per § 349.13.[8]

---

[7] We would normally identify the date on which the ordinance became effective, but the copy in the record does not reveal the date.  As noted, Douglas' recollection is that this ordinance has been around, and unchanged, since 1990.  We note that the current chapter 7 of the ordinance code became effective in September 2019.  *See* CHENEQUA, WIS., CODE ch. 7.3(1)(a) (2019).  Parts of chapter 7 have changed compared to the record copy, but not the provision at issue other than its renumbering. *Id.*

[8] No one asserts that WIS. STAT. § 346.50 has any bearing in this appeal, which pertains mainly to persons with disabilities.  The broad no parking ordinance is also in lieu of WIS. STAT. §§ 346.51 through 346.56, which are more specific statutes regulating parking when permitted, such as how to park and stop on streets, including when and how angle parking is permitted, etc.  Dahlquist makes no developed argument that this provision impacts the analysis here.

¶13    Under WIS. STAT. § 349.13(1e)(a), "local authorities" are empowered to regulate parking by "prohibit[ing], limit[ing] the time of or otherwise restrict[ing]" it.[9]   Therefore, the Village is expressly and specifically authorized to prohibit parking on Village highways and streets.

¶14    Dahlquist points to WIS. STAT. § 349.13(1e)(c)2., which states as follows:

> 2. *Parking regulations that prohibit, limit or restrict the parking of vehicles for any period longer than 24 consecutive hours*, during any hours between 12 midnight and 7 a.m., or any portion thereof or during a snow emergency as determined by a municipality, *shall be effective in the municipality upon a two-thirds vote of its respective governing body* notwithstanding this subsection and [WIS. STAT. §] 346.02(7) *when official traffic signs have been placed or erected at or reasonably near the corporate limits of the municipality on all state and county trunk highways and connecting highways informing motorists that 24-hour parking limitations*, night parking regulations or snow emergency regulations are in effect in the municipality.

(Emphasis added.)

¶15    Here, the Village's ordinance prohibits parking on all streets for a period longer than twenty-four hours—all the time.   It falls squarely within the express provisions of WIS. STAT. § 349.13.   Pursuant to the statute, the Village placed traffic signs near the corporate boundaries notifying motorists of the ban.

¶16    While Dahlquist questioned the enactment of the ordinance before the circuit court, she introduced no evidence to show that the Village did not

---

[9] The statutes define "local authorities" to include "every … village board or other local agency having authority under the constitution and laws of this state to adopt traffic regulations." WIS. STAT. § 340.01(26); *see* CHENEQUA, WIS., CODE ch. 7.01(1)(a) (adopting the foregoing statutory definitions).

properly adopt the ordinance, and she concedes that she is not pursuing this issue on appeal. As noted, Douglas's testimony that signs are posted near all of the corporate limits and other areas required by the statute was undisputed and is also conceded by Dahlquist.

¶17 In short, the requirements of subd. 2. of WIS. STAT. § 349.13(1e)(c) were supported by the evidence, and Dahlquist introduced nothing to show otherwise. Again, an ordinance is presumed valid. *See Town of Clearfield*, 150 Wis. 2d at 20. Although that presumption can be overcome, Dahlquist fell far short of doing so, providing neither persuasive legal argument nor evidence. Therefore, the ordinance conforms to § 349.13 and does not violate state law.[10]

---

[10] Dahlquist briefly mentions WIS. STAT. § 349.03(1), contending that the ordinance is not expressly authorized as required, by "[WIS. STAT. §§] 349.06 to 349.25." As we have already explained above WIS. STAT. § 349.13(1e)(a) and (c)2. authorize a village to prohibit parking for periods longer than twenty-four consecutive hours within their limits, provided the village posts as required.

Dahlquist's equally undeveloped argument based on WIS. STAT. § 349.06(1)(a) is also unavailing, as she fails to show how the statute's strict conformance requirement with WIS. STAT. chs. 341 to 348 and 350, applicable to traffic regulations, applies here. Her failure to develop this argument is reason enough for us to disregard them. *See State v. Culver*, 2018 WI App 55, ¶25 n.14, 384 Wis. 2d 222, 918 N.W.2d 103 (we do not generally address undeveloped arguments).

Lastly, Dahlquist's arguments based on *City of Madison v. Reynolds*, 48 Wis. 2d 156, 180 N.W.2d 7 (1970), do not support a different conclusion. The state generally retains control over the highways unless delegated, *see id.* at 158, and WIS. STAT. § 61.34(1) grants village boards the power to manage and control their property, finances, highways, streets, and navigable waters and the power to benefit the safety, welfare, and convenience of the public, carrying out these powers through such means as licensing, regulation, and fines. While these powers can be limited by "express language," WIS. STAT. § 349.13(1e)(a) and (c)2. do expressly authorize a village to prohibit parking for periods longer than twenty-four hours.

*The Circuit Court Did Not Err in Denying Dahlquist's Summary Judgment Motion*

¶18    Dahlquist expends significant effort and briefing to her argument that the circuit court erred by denying her summary judgment motion, because there were no disputed issues of fact. She focuses on the motion's procedural background.

¶19    We conclude the court did not err in denying the motion. First, and most importantly, Dahlquist has not shown that a decision on summary judgment would have been any different than the circuit court's final decision finding the ordinance did not violate state law. In fact, she acknowledges that success, even on summary judgment, depended on establishing that the ordinance violated state law. Thus, her focus on this past chapter is utterly unavailing.

¶20    Second, as the Village points out, summary judgment is not appropriate when the case is for a forfeiture due to a traffic violation. *See **State v. Schneck***, 2002 WI App 239, ¶¶7, 9-10, 257 Wis. 2d 704, 652 N.W.2d 434.

¶21    Finally, even if we assume that a summary judgment is permitted in a municipal prosecution for a forfeiture due to a parking violation, it is fundamental summary judgment methodology that if there are any genuine issues of material fact, the motion must be denied. ***Gulbrandsen v. H & D, Inc.***, 2009 WI App 138, ¶5, 321 Wis. 2d 410, 773 N.W.2d 506; *see also* WIS. STAT. § 802.08(2). As the circuit court noted, Dahlquist herself raised potential issues of fact when she stated she did not know whether she parked on a public or private road, and also gave only a vague description of what the stone pillars indicated about Thompson Lane, e.g., what exactly did it say about being private or about parking. At that point in time, it was unclear whether those were issues or not, as

Dahlquist's plea of not guilty "put all matters in such case at issue." WIS. STAT. § 345.40.

*The Circuit Court Did Not Err in Further Explaining the Basis of its Constitutional Decision*

¶22    Dahlquist argues that the circuit court erroneously exercised its discretion by failing to give a basis for its decision that the ordinance was not unconstitutional. She asserts the court should have identified the relevant facts, applied the proper standard of law, and used a rational process to reach a reasonable conclusion. *See **Dane Cty. DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198. The circuit court did not err for several reasons.

¶23    As the Village points out, for traffic regulation cases and municipal ordinance violations, appeals are taken from an order, judgment or disposition that is recorded in docket entries. WIS. STAT. § 808.03(1)(c), (d). Dahlquist points to no authority for the notion that a written decision is required.

¶24    That said, because the circuit court did issue a written decision, we further address Dahlquist's argument.

¶25    First, Dahlquist asserted a facially constitutional challenge and admits this is an issue that we review de novo. *See **State v. Wood***, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63 ("The constitutionality of a statute is a question of law that we review de novo.").

¶26    Second, Dahlquist has made no constitutional arguments on appeal. The heading of her brief's first argument is that the court erroneously exercised its discretion when it determined the ordinance was constitutional without providing any rationale. As far as the actual constitutional argument goes, she only provides

the standard of review. *State v. Culver*, 2018 WI App 55, ¶25 n.14, 384 Wis. 2d 222, 918 N.W.2d 103 (we do not generally address undeveloped arguments).

¶27 Third, the motion she filed before the circuit court challenged the constitutionality of the ordinance on both substantive and due process grounds, but did so with a meager single page of briefing. Dahlquist failed to cite to a single authority despite the remarkably heavy burden she has to overcome to succeed on a facial constitutional challenge.[11] She did not develop her argument and therefore, as noted above, it need not be addressed, by either the circuit court or this court.

¶28 Finally, we decline to consider Dahlquist's constitutional challenge because she does not indicate, nor do we see it in the record, that she served a copy of the proceeding on the attorney general. When a judicial declaration is sought that an ordinance is unconstitutional under WIS. STAT. § 806.04(11), the following applies: "If a statute, ordinance or franchise is alleged to be unconstitutional … the attorney general shall also be served with a copy of the proceeding and be entitled to be heard." Although Dahlquist's challenge is largely statutory, and she did not assert her claim as a § 806.04 declaratory challenge— she nonetheless sought a declaration seeking to invalidate the ordinance as unconstitutional—in which case courts require service on the state as a "judicially created procedural rule" and do so whether it is a facial or as-applied challenge. *Brown Cty. Human Servs. v. B.P.*, 2019 WI App 18, ¶¶25, 27, 386 Wis. 2d 557,

---

[11] Under a facial challenge, Dahlquist must demonstrate that the law cannot be enforced "under any circumstances." *State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63. We further review an ordinance with the presumption that it is constitutional. *Id.*, ¶15. Thus, Dahlquist must have proven to the circuit court that the ordinance was unconstitutional beyond a reasonable doubt. *Id.*

927 N.W.2d 560. Because "the state as a whole is interested in the validity" of ordinances, *see **McCabe v. City of Milwaukee***, 53 Wis. 2d 34, 37, 191 N.W.2d 926 (1971), we follow the rule here.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.